IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KELLYE MICHELLE MCGARRAH                                            PLAINTIFF

V.                              NO. 13-5157

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration           DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Kellye Michelle McGarrah, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff filed her current applications for DIB and SSI on September 2, 2009, alleging an inability to work since July 24, 2009, due to asthma, bipolar disorder, depression, anxiety, loss of memory, loss of concentration and focus, and fatigue. (Tr. 108-109, 120, 124). An administrative hearing was held on November 15, 2011, at which Plaintiff appeared with counsel and testified. (Tr. 26-48).

By written decision dated February 1, 2012, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - chronic

obstructive pulmonary disease (COPD)/asthma and a bipolar disorder. (Tr. 15). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 16). The ALJ found that Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation ( a relatively clean environment) and she can perform only simple, repetitive tasks with limited contact with the public.

(Tr. 17). With the help of the vocational expert (VE), the ALJ determined that Plaintiff would be unable to perform her past relevant work, but that there were other jobs Plaintiff would be able to perform, such as mail room clerk, assembler, clerical mailer, and trimmer. (Tr. 19-20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on May 30, 2013. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 15, 16).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.   Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnard, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnard, 314 F.

3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the

national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**III.    Discussion:**

Plaintiff raises the following arguments in this matter: 1) Plaintiff Meets Listing 3.02A and 3.03; 2) The ALJ erred in his analysis of Plaintiff's mental impairment; 3) The ALJ erred in his RFC assessment; 4) The ALJ erred in his credibility analysis; and 5) The Plaintiff is unable to perform the jobs identified by the ALJ. (Doc. 15).

  **A.  Whether Plaintiff Meets a Listing:**

Plaintiff argues that she meets Listing 3.02A and 3.03. "The claimant has the burden of proving that his impairment meets or equals a listing." Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment must meet all of the listing's specified criteria." Id. "To establish equivalency, a claimant 'must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" Carlson v. Astrue, 604 F.3d 589, 594 (8th Cir. 2010), quoting from Sullivan v. Zebley, 493 U.S. 521, 531 (1990). "[W]hen determining medical equivalency, an impairment can be considered alone or in combination with other impairments." Carlson, 604 F.3d at 595.

Listing 3.02A reads as follows:

> Chronic obstructive pulmonary disease, due to any cause, with the FEV1 equal to or less than the values specified in table I corresponding to the person's height without shoes. (In cases of marked spinal deformity, see 3.00E.):

20 C.F.R. Appendix I, Subpart P**,** Listing 3.01A. In her Disability Report - Adult, Plaintiff's

height is listed as 5 feet 10 inches. (Tr. 123). There are other records which report she is 69 inches and others that report she is 70 inches. The Court will give Plaintiff the benefit of the doubt and consider Plaintiff's height as 69 inches tall, which is what is argued by both Plaintiff and Defendant. Accordingly, Table I indicates that Plaintiff's FEV1 must be equal to or less than 1.55 to meet the listing of chronic pulmonary insufficiency. In the test performed on April 27, 2010 by Dr. Rayetta Eaton, Plaintiff's FEV1 results pre-med were 1.12, 1.33, 1.34, and post-med were 1.19,  .90, and 1.06. (Tr. 327). Defendant argues that although the ALJ erroneously stated that there was no evidence of an FEV1 equal to or less than the value specified in listing 3.02A, he cited other substantial objective medical evidence that showed that Plaintiff did not meet listing 3.02A. See Alexander v. Astrue, No. 07-4913, 2008 WL 4091684 at *7-8 (E.D. Pa., Sept. 2, 2008) (affirming ALJ's decision because, even though he erroneously stated that plaintiff's FEV1 is not equal to or less than the values in listing 3.02A, the ALJ nevertheless cited other substantial objective medical evidence).

In the present case, subsequent to the April 27, 2010 Spirometry Report, another Spirometry test was performed on August 6, 2010, which reported FEV1 values above the 1.45 threshold for meeting listing 3.02A. (Tr. 342). In a Pulmonary Function Report completed by Dr. Jon A. Sexton on August 6, 2010, Dr. Sexton reported that Plaintiff had moderately severe air flow obstruction in the smaller airways with moderate bronchodilator response which suggests reactive airways disease. (Tr. 341).  It is noteworthy that comments on the Spirometry Report indicate that the peak flows did not represent Plaintiff's best efforts. (Tr. 342-343).

The ALJ also considered the fact that Plaintiff smoked cigarettes until some time in 2009 (Tr. 31), and that Plaintiff did not seek treatment for breathing difficulties since 2009, although

she did complain of some coughing and wheezing in 2011. (Tr. 354). In fact, on December 7, 2010, Plaintiff reported to Dr. Martha Morgan that she was doing "quite well recently." (Tr. 356).

Based upon the foregoing, the Court believes there is substantial evidence to support the ALJ's finding that Plaintiff did not meet Listing 3.02A.

With respect to Listing 3.03, said listing provides:

> Asthma. With :
>
> A. Chronic asthmatic bronchitis. Evaluate under the criteria for chronic obstructive pulmonary disease in 3.02A; Or
> B. Attacks (as defined in 3.00C)[1], in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. Appendix I, Subpart P, Listing 3.03. The record indicates that Plaintiff received refills of her asthma medications and sought treatment for minor illnesses, such as bronchitis and upper respiratory infections occasionally. In 2009, Plaintiff saw a physician four times. (Tr. 243, 282, 283, 366). It was reported that on January 23, 2009, Plaintiff presented to pick up her medication and she reported she was doing well. (Tr. 243). At that time, Plaintiff reported she was going to quit smoking. (Tr. 243). On May 6, 2009, Plaintiff presented to Dr. Martha Morgan with a cough, nasal congestion and some sneezing, and had been using her inhaler as needed for any wheezing. (Tr. 283). She was assessed with sinusitis, mild bronchitis, and a history of asthma.

---

[1] 3.00C defines attacks of asthma or episodes of bronchitis as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room, or equivalent setting. 20 C.F.R. pt. 404, subpt. P, app. 1 § 3.00C.

(Tr. 283). On July 7, 2009, Plaintiff presented to Dr. Morgan with a cough and wheezing and was assessed with mild bronchitis and asthma. (Tr. 282).

In 2010, Plaintiff sought treatment as follows: On February 24, 2010, Plaintiff presented to Dr. Morgan with chest congestion/asthma and was not feeling well. (Tr. 366). She was assessed with acute sinusitis, unspecified and asthma, unspecified. (Tr. 366). On March 12, 2010, Plaintiff presented to Dr. Rebecca Barrett with congestion and a fever and was assessed with a URI(upper respiratory infection). (Tr. 365). On March 29, 2010, Plaintiff presented to Dr. Morgan with a rash on her arm and hip. (Tr. 362). On June 10, 2010, Plaintiff presented to the clinic to pick up her medications. (Tr. 360). On September 9, 2010, Plaintiff presented to the clinic to pick up her Singulair and to ask for a referral to an asthma specialist. (Tr. 358). She was assessed with asthma, unspecified, cough and allergic rhinitis. (Tr. 359). On December 7, 2010, Plaintiff presented to Dr. Morgan to pick up her medications and reported that she had been doing "quite well recently." (Tr. 356). She was assessed with asthma, unspecified. (Tr. 357).

In 2011, Plaintiff presented to a doctor four times, and was assessed with a URI (Tr. 354), "RAD," asthma. (Tr. 353). One visit was to pick up medications. (Tr. 350). At the final visit in 2011, she was assessed with acute bronchitis. (Tr. 349).

It is clear that based upon the information referenced above, Plaintiff does not meet Listing 3.03. Accordingly, based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's finding that Plaintiff's physical impairment does not meet Listing 3.02A or 3.03.

### B.     Plaintiff's Mental Impairment:

Plaintiff argues that the ALJ erred by finding that she did not meet listing 12.04 for

AO72A
(Rev. 8/82)

affective disorders, and that the ALJ failed to refer to her GAF findings as reported by Ozark Guidance Center. What Plaintiff fails to note is the fact that the only GAF score that is relevant to this proceeding is the one assigned by Dr. Terry Efird, Ph.D., in his Mental Diagnostic Evaluation, dated November 30, 2009. (Tr. 296-299). The other GAF scores involve times prior to the relevant time period. In his evaluation, Dr. Efird assigned Plaintiff a GAF score of 55-65. (Tr. 299).

On December 8, 2009, non-examining consultant, Cheryl Woodson-Johnson, Psy.D., completed a Mental RFC Assessment and Psychiatric Review Technique form. (Tr. 301, 305). She found that Plaintiff was capable of performing work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; and supervision required is simple, direct and concrete (unskilled).(Tr. 303). She also found that Plaintiff had a moderate degree of limitation in difficulties in maintaining concentration, persistence, or pace, a mild degree of limitation in activities of daily living, and a mild degree of limitation in maintaining social functioning, with no episodes of decompensation, each of extended duration. (Tr. 315). On March 4, 2010, Brad F. Williams, Ph.D., affirmed this finding. (Tr. 319).

Dr. Efird found that Plaintiff endorsed the ability to drive unfamiliar routes, the ability to shop independently, the ability to handle personal finances satisfactorily, and the ability to perform most activities of daily living satisfactorily, unless remarkably depressed. (Tr. 299). Dr. Efird found that Plaintiff communicated and interacted in a reasonably socially adequate manner and in a reasonably intelligible and effective manner; that she had the capacity to perform basic cognitive tasks required for basic work like activities; that she appeared able to track and

-8-

respond adequately for the purposes of the evaluation but that remarkable problems with immediate auditory attention span were suggested, at least in comparison with estimated intellectual functioning; and that she generally completed most tasks within an adequate time frame. (Tr. 299).

Clearly, based upon the records relating to the relevant time period, there is substantial evidence to support the ALJ's findings with regard to Plaintiff's mental impairments.

**C.     Credibility Analysis:**

Plaintiff generally challenges the ALJ's credibility analysis. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with his RFC determination. The ALJ then discussed various facts to support his conclusion, such as: the lack of treatment for breathing problems after

AO72A
(Rev. 8/82)

September 2009; the fact that between 2007 and 2009, Plaintiff was smoking; there was no evidence Plaintiff sought mental health treatment after 2009; Plaintiff testified that she took no psychiatric medication; Plaintiff was capable of getting her children ready for school and that on a good day, she could do everything and on a bad day, she could do nothing; and that Plaintiff's treating physicians did not place any functional restrictions on her activities that would preclude light unskilled work activity with certain environmental restrictions. (Tr. 18-19).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's credibility analysis.

### D. RFC Determination:

Plaintiff argues that the ALJ failed to mention the treating physicians or the weight accorded to their findings, and failed to assign weight to the findings of Dr. Rayetta Eaton, who conducted a General Physical Examination on April 27, 2010, and who assigned severe limitations in lifting, walking, carrying, handling, and speaking. (Tr. 326). As noted by Defendant, Dr. Eaton indicated in her report that her diagnosis of severe lung disease was based upon the pulmonary function test performed that same day, and she therefore assigned the severe limitations. (Tr. 326). However, the physical examination conducted by Dr. Eaton otherwise indicated that Plaintiff had normal range of motion and strength in her extremities and limbs. (Tr. 324-325). Thereafter, the August 2010 pulmonary function report did not reveal as severe a breathing problem as indicated in April, and the notes reflect that Plaintiff did not give her best effort at the August 2010 test. In addition, the ALJ's RFC finding accommodated Plaintiff's breathing issues and Dr. Eaton's assigned limitations to a significant extent by limiting Plaintiff to light work with environmental limitations.

Based upon the record as a whole, the Court finds that there is substantial evidence to support the ALJ's RFC findings, and the weight the ALJ gave to the opinions.

### E.   Whether Plaintiff can Perform the Jobs:

Plaintiff contends that the ALJ's initial hypothetical question to the VE did not contain all of her impairments.  In his hypothetical to the VE, the ALJ inquired as follows:

> Q: Hypothetical: we have a 34-year-old individual, 12th grade education, good ability to read and write and use numbers. This individual would be able to perform light and sedentary work activity....
> . . .
> Q: All right. This individual would be able to, to occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry up to 10 pounds. She would be able to stand for up to six hours in an eight hour workday and sit for up to six hours in an eight hour workday. That would be standing and/or walking with normal breaks for up to six hours and then – in an eight hour workday and then sitting with normal breaks for up to six hours in an eight hour workday. She could use her hands for hand controls, feet for foot controls. There would be no postural limitations; no manipulative limitations; no visual or communicative limitations. But there would be an [sic] environmental limitations and that's what I want to go over with you. This individual has been diagnosed with asthma and as well as COPD. In that regard, she's a smoker but professes to quit smoking, is that correct?
>
> CLMT:  Yes, sir.
>
> ALJ: All right. Very well then.
>
> Q: Dr. Young, she would need to work in what I would consider a reasonably clean environment where the temperature is controlled and the air is reasonably clean. Perhaps this hearing room might be an example of that type of facility. Are you familiar with that limitation?
>
> A. Yes, Your Honor.
>
> Q: All right. Very well then. She also has been diagnosed as having affective disorder. You are currently taking medications for that, is that correct, for your affective, for your depression?
>
> CLMT: No, sir.

> ALJ: For your bipolar
>
> CLMT. No, sir. I don't take anything for it.
>
> ALJ: Okay. Strike that then. But anyway, she has been diagnosed as having affective disorder and I'm going to limit her in that regard to simple, unskilled type work. Under routine supervision, she would be able to relate to co-workers and supervisors for work related purposes. She probably should have minimal contact with the general public. And she could adapt to her work situations. She does have symptomology from a variety of sources that would be of sufficient severity that they would be noticeable to her, but nonetheless, she can remain attentive and responsive in a work setting and carry out work assignments satisfactorily. Assuming this hypothetical, Dr. Young, could she perform any of her past relevant work, either as she has described it or as that work is customarily performed?
>
> A: She could not.. . .
>
> Q: ...can you identify jobs under this hypothetical that such an individual could perform, and if so, I would ask you to identify the job vocationally, indicate numbers existing in the national and/or regional economy, as well as the DOT numbers?
>
> Q: Yes, Your Honor. Some examples that would fit the hypothetical, one would be as a mailroom clerk; ... There also would be a position as an assembler; ... a clerical mailer;...And there also would be a position as a trimmer;...

(Tr. 42-45).

The Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's response to the hypothetical questions posed by the ALJ constitutes substantial evidence supporting the ALJ's conclusion that there were other jobs Plaintiff would be able to perform, such as mail room clerk, assembler, clerical mailer, and trimmer. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.     Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 13th day of March, 2015.

/s/ *Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-13-

**AO72A**
**(Rev. 8/82)**